HENRY SEELIGSON v. THE TAYLOR COMPRESS COMPANY.

(Case No. 1433.)

1. COMPRESS AND STORAGE COMPANY, CONTRACT WITH.— If a corporation whose business is the storing and compressing of cotton specifies its rates of charges and gives notice to a customer in advance, and the latter afterwards makes use of its warehouse, he thereby assents to the proposed charges, and cannot refuse to pay them upon the ground that they are more than is reasonable or customary.

2. SAME — GENERAL PROTEST — NECESSITY.— The above proposition is true, notwithstanding a general protest against the rates charged, and notwithstanding the fact that this and similar companies afforded the only place for storage, and it was, to that extent, a case of necessity for the plaintiff.

3. SAME — ENFORCEABLE WHEN.— Where cotton is stored, the rates being so much in case it is both stored and compressed, but in case of its removal uncompressed a certain additional charge for storage, the contract is supported by a valid consideration, and enforceable.

4. CHARTER, EFFECT OF ON TERMS.— A corporation chartered to store and compress cotton is under no obligation, by reason of its charter or otherwise, to store cotton not designed to be compressed on the same terms as cotton designed to be both stored and compressed.

5. PUBLIC POLICY, CONTRACTS NOT AGAINST.— Such a contract as that above referred to is not against public policy. In the absence of legislation to that effect, parties, the character of whose business does not subject their property and services to public use, do not do so by combining, though enabled thereby to exact unreasonable charges for the services rendered.

APPEAL from Galveston.   Tried below before the Hon. William H. Stewart.

The following was the agreed statement of the points under rule 59:

Seeligson, who was plaintiff in the court below at the time of the institution of this suit and at the dates here-inafter named, was a cotton factor and commission merchant, and as such doing business in the city and county of Galveston.   The Taylor Compress Company was a private corporation, duly chartered as such, "for the purpose of receiving, storing, compressing, bailing, picking and manufacturing cotton, wool, hides and other produce.   Seeligson was the *bona fide* owner of fifty bales of cotton, marked I. N. G., of the value of $2,000, then in the possession of the Taylor Compress Company, having been sent to the warehouse of said company in the usual course of business, for storage, on account of Seeligson.   On the 28th day of October, A. D. 1881, Seeligson, being desirous of resuming the possession of said cotton for the purpose of the shipment of the same to a foreign market, and having engaged freight room therefor, by written order on appellee requested and directed the delivery of fifty bales of the said cotton to J. Moller & Co., as agents for the steamship Capri, for shipment, as aforesaid, uncompressed.

Appellee refused to deliver the cotton unless the sum of thirty cents per bale was paid for each bale of cotton before the same was removed from the warehouse, claiming a lien on and the right to hold the cotton for this charge.   The cotton had not been compressed, and no other service had been rendered to or performed for or on account of the same, except drayage, sampling and storage — all of which is embraced under the charge of storage, and for which services a charge of forty cents was made by appellee — this being their regular charge for that service.   Appellant tendered this sum of forty

cents per bale when demanding the cotton; the same was refused and delivery of the cotton refused; plaintiff then, on the 9th day of November, A. D. 1881, filed his suit sequestering the cotton.

Appellee claimed the right to this charge of thirty cents against the cotton under its rules and regulations establishing the following tariff of charges, adopted by the company on the 10th day of September, A. D. 1881:

EXHIBIT A.

SEPTEMBER 10, 1881.

THIS TARIFF WILL BE IN FORCE UNTIL FURTHER NOTICE.

*Consignee's Charges.*

Per bale.

Drayage, sampling and storage, per month or part of month ...... 40
Storage for each additional month or part of month.............. 15
On all rejections for extra labor................................. 15
Cotton, if ordered for reweighing, resampling or reclassing, will be
     charged each time........................................... 15
Cotton removed, uncompressed, to other presses or places, in addi-
     tion to above storage charge................................. 30
     No allowance to be made to factors sampling their own cotton.

*Charges to Shippers.*

Per bale.

Drayage to any place in city limits, when furnished by the press .. 12
Cotton classed, class-marked, ship-marked or weighed will be
     charged for yardage and labor, if shipped within six days ....... 18
If not removed within six days after classing, ship-marking or
     weighing, there will be charged for yardage and labor (with the
     privilege of thirty days' storage) an additional sum of.......... 25
Ship-marking .................................................... 5
Arranging for reclassing, weighing or remarking (including labor
     and yardage)...... .............. ............................. 15
Cotton delivered uncompressed will be charged ................. 30
Ties taken off for inspection, bagging cut or torn by reweighers or
     brokers, will be charged:
     For a patch................................... .............. 15
     For a band ................................... .............. 5

These regulations were known to appellant at the time of the delivery of the cotton, but he had never agreed to

this charge and had always protested against it. Appellee does not claim to have rendered any actual service to, or to have incurred any expense for or on account of this cotton, other than that embraced in the charge of forty cents as storage; but bases its claim on appellant's having sent his cotton to the company's warehouse, knowing these charges were demanded. There are, and on the 28th day of October were, no public warehouses, or other warehouses, for the accommodation and storage of the cotton shipped to and received in the city and port of Galveston other than those owned and controlled by the cotton or compress companies, located and operated in said city — being five in number. All cotton is, immediately on its arrival in Galveston, sent to one of the warehouses of one of said companies, for the reason that there is no other place for the storage of the same. Each and all of said companies, since the 10th day of September, A. D. 1881, demanded the same charge of thirty cents per bale on all cotton delivered to them. Prior to this it had not been customary to make this charge by the Taylor Compress Company, though the other presses had previously demanded same. Appellant had been the president of the Taylor press for three years, and it had prior to this been their uniform practice not to demand this charge.

About half a million bales of cotton are annually received in the city and port of Galveston. . . .

A jury was waived and cause submitted to the court, the Hon. Wm. H. Stewart, judge of the district court of Galveston county, who gave judgment for the defendant for the sum of $15, the amount by them claimed on their plea in reconvention, on account of the charge of thirty cents per bale claimed on the fifty bales of cotton, and judgment for the plaintiff for the value of the cotton, to wit, $2,000.

From this judgment Henry Seeligson appeals, and the

following questions of law are now by agreement respect-fully submitted to this court for its decision:

1st. Did the sending of the cotton in question to the warehouse, by appellant, under the particular circum-stances of this case, to wit, under protest as to this charge of thirty cents, in the ordinary course of busi-ness, and as a matter of necessity, there being no other place to store the same, create an implied contract or any contract to pay this charge?

2d. If the circumstances of the delivery of this cotton were sufficient to create such a contract, can the same be enforced against appellant?

3d. Was not appellee, under its charter, a warehouse-man as well as, and in addition to and independent of, its business of compressing of cotton, and was not this cot-ton under the facts delivered to it in its capacity as ware-houseman?

4th. Is not such a contract in restraint of trade and void as against public policy?

*Wheeler & Rhodes*, for appellant.

I. That the receiving of the cotton by appellee under the peculiar circumstances of this case, to wit, under their charter and in their capacity as warehousemen as well as compressors of cotton, under the protest of ap-pellant as to this particular charge, as a matter of neces-sity, there being no other place of storage, the custom of appellee having been heretofore not to make this charge, the same being a contingent charge arising only in the removal of the cotton uncompressed, did not create an implied contract to pay this particular charge, for the fol-lowing reasons, to wit:

1st. Because the same was incomplete, wanting in privity and that mutual assent necessary to create a contract.

2d. These circumstances did not constitute an implied

contract, because contrary to the course of dealing between the parties.

3d. Appellee, under its charter, was warehouseman and manufacturer as well as compressor of cotton, and this claim is in violation of its undertaking and duty as warehouseman.

4th. This charge of thirty cents per bale was not in the minds of both of these parties at the time of the delivery of the cotton, for the reason that the condition upon which, under the tariff, this charge would attach, was only upon its removal before compressing, which would not occur in the ordinary course of business.

5th. Unreasonable and unjust. In support of this proposition we beg to refer to Blackstone, vol. 2, p. 443; 1 Chitty on Contracts (9th English ed.), p. 80, note (S). For case in point see 14 Me., p. 10, referred to in notes of Chitty; Romaley v. Leland, 6 Rob. (N. Y.), 367; 1 Hilliard on Contracts, p. 13, sec. 18, and cases cited same page, 52; 1 Pars. on Contracts, pp. 475, 476. Without further particular reference to authorities, we invoke the law of contracts as laid down in the books and universally accepted by the profession.

II. If the circumstances of the delivery of the cotton were insufficient, and such originally as to create an implied contract, the same was a *nudum pactum*, absolutely void for the want of any consideration. In support of this proposition we submit the following points and authorities: "A consideration of some sort or another is so absolutely necessary to the forming of a contract, that a *nudum pactum*, or agreement to do or pay anything on one side, without any compensation on the other, is totally void in law, and a man cannot be compelled to perform it." Broom's Legal Maxims, p. 472. A valid, sufficient consideration is of the very essence of every contract. The whole law of implied contracts is bottomed upon services rendered, work performed, value re-

ceived, a consideration; it is from this consideration the law implies a contract, a promise to pay. But when the consideration is wanting, out of what material shall we construct the implied contract? 1 Pars. on Contracts, p. 427; 1 Hilliard on Contracts, p. 52, a full discussion of the law of implied contracts; 1 Chitty on Contracts, p. 24.

III. Appellee, in fact, and as a matter of law, under its charter, was a warehouseman in addition to and independent of its business of compressing cotton. Therefore the delivery of this cotton "for *storage* for account of appellant," was not necessarily for the further purpose of its compression, no more so than for its picking or manufacture, and such delivery establishes no other or further relation as between that cotton and appellee's than that of warehouseman. Why not demand $1,000 per bale if removed uncompressed, unmanufactured, or burnt before either? And if so, what court would enforce the demand? Such an unreasonable regulation, no matter how adopted, or how notorious, would by any court of any civilized country be held bad, and void as in violation of the fundamental principles of common rights, and as dangerously interfering with the rights of individuals and the public.

IV. Such a contract would be in restraint of trade and void as against public policy. In support of this proposition we submit the following points and authorities: 2 Pars. on ·Contracts, p. 753, and case cited in note (C). Nor is it necessary for the application of this rule that the restraint shall be injurious to the public; it is sufficient if it be unreasonable as between the parties. 1 Hilliard on Contracts, p. 369, § 59; 2 Chitty on Contracts (9th English ed.), p. 987; 1 Potter on Corporations, sec. 32, pp. 55-57; 2 Potter, p. 921, cases cited in note (G); Angell & Ames on Corporations, secs. 335, 347; Grant on Corporations, 35.

*Ballinger, Jack & Mott,* for appellee.

GOULD, CHIEF JUSTICE.— Responding to the questions submitted for our decision, we say:

1. That the sending of the cotton in question to the warehouse of appellant did amount to a contract to pay the charge of thirty cents before removal of the cotton uncompressed; and that this is so notwithstanding appellant had always protested against that charge, and although appellant sent his cotton there for storage in the ordinary course of business, and although, save this and other like warehouses carried on by compress companies making like charges, there was no other place for the storage of cotton, and it was, to that extent, a matter of necessity to send it to one of those warehouses. Most of the points suggested by counsel for appellant under this head are settled in the case of Southern Steamship Co. v. Sparks, 22 Tex., 659. The court say: "If a tavern-keeper, warehouseman or wharfinger specifies his rates of charge, and gives notice to a customer in advance, and the latter afterwards puts up at his tavern, or makes use of his warehouse or wharf, he thereby assents to the proposed charges, and cannot refuse to pay them, upon the ground that they are more than is reasonable or customary. By the use of the wharf, after notice of plaintiff's rates of charges, the defendants impliedly contracted to pay them, and they cannot now disaffirm their contract."

2. That contract could be enforced, being supported by a valid consideration, viz., the same consideration which supported the charge of forty cents. The contract in effect was, that, if the cotton was removed uncompressed, the charge for storage should be increased thirty cents.

3. Under its charter, appellee rightfully carried on the business of warehouseman, only in connection with, and as an adjunct to, its main business of compressing cotton, and the cotton was delivered to it, not exclusively in its capacity as a warehouseman, but also in its capacity as a compress company, and subject to its known and uniform

charges. The compress company was under no obligation, by reason of its charter or otherwise, to store cotton not designed to be compressed on the same terms as cotton designed to be both stored and compressed.

4. Such a contract is not in restraint of trade, or void as against public policy. This question was settled in the case of Ladd v. The S. C. P. & M. Co., 53 Tex., 172. In that case it was held that "the business of warehousing and compressing cotton is free to every one who wishes to engage in it. Also held that, "in the absence of legislation to that effect, a party who has not subjected his property and services to public use by the character of the business in which he is engaged, does not do so by reason of combination with others in a like business, though he is enabled thereby to exact from those who employ him unreasonable and extortionate charges for the services rendered." To our minds these propositions constitute a conclusive and satisfactory answer to the claim that the contract was against public policy.

The circumstances under which Seeligson sent his cotton to appellee's warehouse do not justify the inference that he sent it there otherwise than voluntarily. The necessity under which he labored amounted to no more than this: that he found it to his interest to store his cotton in a warehouse provided for that purpose; and no such storage was to be had on better terms than those offered by appellee.

His general protest against such charges for cotton delivered uncompressed did not weaken the inference that he sent this cotton to be stored on the usual and well-known terms on which alone appellee was willing to receive it. It does not appear that those terms were unreasonable; but even if they were, having assented to them by his acts, he could not afterwards repudiate his contract. 22 Tex., supra.

Like one who receives and stores seed cotton at his gin

house for the purpose of ginning it and packing it in bales, the storage of the seed cotton in the gin house and of the lint cotton in the lint room, being but necessary and subordinate incidents to the main business, so here, the storage provided for cotton was designed to be used primarily in connection with the business of compressing, and to promote the success of that business. The owner of the gin house and ordinary cotton press can afford to charge less in proportion where he stores, gins and bales, than he could if called on to store seed cotton alone, or to gin it and store the lint. Having prepared himself with facilities for changing the seed cotton into lint cotton in bales, he might reasonably regulate his charges so as to discourage the use of his gin house as a mere storehouse for cotton. His interest requires him to give the preference to customers who wish their cotton stored for the purpose of being ginned and baled. The compress company but exercises a similar privilege when it adds to its charge for storage where cotton is delivered uncompressed. It is not a charge for compressing not done, but is an additional charge for storage; because when called on to furnish nothing more than storage, their interest is to add to their ordinary charge therefor, so as to encourage customers who wish to use both their warehouse and their compress. We regard the questions raised in this case as settled in the case of Southern Steamship Company v. Sparks (22 Tex.), and Ladd v. S. C. P. & M. Co., 53 Tex., 172; and in accordance with the principles laid down in those cases the judgment is affirmed.

AFFIRMED.

[Opinion delivered February 7, 1882.]