## H. N. JONES v. O. M. CARTER.

Decided March 9, 1907.

### 1.—Dedication of Streets—Reservation of Exclusive Rights in—Monopoly.

The owners of a tract of land, with a view to establishing a town thereon, caused the same to be surveyed and subdivided into lots and blocks, streets and alleys, and in connection with the map of the same they executed and placed of record a deed dedicating to the public the streets and alleys in said prospective town. In the dedication deed the owners of the land expressly and explicitly reserved to themselves the exclusive right for all time to construct, maintain and operate street railways, telegraph, telephone and electric light systems, sewer systems, and all other public utilities upon, along and across the streets and alleys so dedicated, without restriction of any kind or character by any one. Held, that the dedication deed, insofar as it attempted to reserve to the dedicators the exclusive right to construct, operate and maintain public utilities in said town free from the control of the municipal authorities, was null and void, both because it created a monopoly and because

it sought to bind the municipal authorities in their control over the city's most important interests.

### 2.—Monopoly—Definition.

The term monopoly as now understood embraces any combination or contract, the tendency of which is to prevent competition in its broad and general sense, and to control prices to the detriment of the public, and the form assumed is immaterial.

Error from the District Court of Harris County. Tried below before Hon. Norman G. Kittrell.

*Leon B. Smith,* for plaintiff in error.—The right to the exclusive use of the streets and alleys of Houston Heights, which was reserved and retained in the deed of dedication from O. M. Carter and the Omaha & South Texas Land Company, as pleaded by the defendant in error, was ineffectual and void, and did not vest in the grantors or donor in said instrument any right to the use of said streets and alleys, except such rights as were or could be enjoyed by them in common with the public generally. Elliott on Roads and Streets, pp. 108-110.

To give effect to the reservations and the rights insisted upon by the defendant in error in this suit, would be to create in his favor and accord to him a monopoly in violation of the Constitution of the State of Texas and in contravention of public policy. Constitution, art. 1, sec. 26.

*W. G. Love* and *Hutcheson, Campbell & Hutcheson,* for defendant in error.—An owner of the fee simple title to land may dedicate the right to use the same for street purposes, and as a part of the deed of dedication he may reserve the fee of the land, together with such rights with respect to the use thereof as he may see fit to impose, and the public or the persons in whose favor or for whose benefit such dedication is made takes the rights conveyed, subject to such burdens and conditions as may have been so imposed by the grantor. State of Texas v. Travis County, 85 Texas, 435; City of Llano v. Llano County, 5 Texas Civ. App., 132; O'Neil v. City of Sherman, 77 Texas, 182; Cohoes v. Morrison, 42 Hun (N. Y.), 216, 116 N. Y., 662; Ottawa, O. C. & C. G. Ry. Co. v. Larson, 40 Kan., 301; City of Noblesville v. Lake Erie & W. Ry. Co., 130 Ind., 1, 29 N. E. Rep., 484; Brunswick & W. Ry. Co. v. Waycross, 91 Ga., 573; Cohoes v. Delaware & H. Canal Co., 134 N. Y., 397; 9 Am. and Eng. Enc. of Law, 2d ed., 75; Dillon on Municipal Corporations, sec. 629; Elliott on Roads and Streets, pp. 91, 108, 109, 110, 176 and 177.

When a municipal corporation is organized, it succeeds to and becomes vested with only such rights of a public nature as were vested in the public prior to its incorporation, and it does not acquire, by virtue of its corporate existence, any greater rights in the streets or roads situated within its corporate limits than was theretofore held by the public which it represents. City of Llano v. Llano County, 5 Texas Civ. App., 132; Elliott on Roads and Streets, pp. 108, 109; 2 Dillon on Mun. Cor., sec. 631, and notes, and sec. 642 and notes.

The term monopoly, as used in the Constitution of this State, means a license or privilege allowed by some sovereign authority for the sale, buying, selling, making, working or using of an article or commodity, whereby the subjects in general are restrained in that liberty of manufacturing or trading which they had before the granting of such license or privilege; and the enjoyment of a right which does not depend for its existence upon a license or privilege granted or created by governmental authority or agency does not fall within the term monopoly, as used in the Constitution, or such as is forbidden by public policy. Seeligson v. Taylor Compress Co., 56 Texas, 219; McDonnell v. International & G. N. Ry. Co., 60 Texas, 596; Brenham v. Brenham Water Works Co., 67 Texas, 561; 1 Eddy on Combinations and Monopolies, sec. 1.

GILL, CHIEF JUSTICE.—O. M. Carter brought this suit to enjoin H. N. Jones from constructing, establishing, maintaining or operating upon, along, over or across any of the streets or alleys of the city of Houston Heights any electric light poles, wires or other fixtures, and to forever enjoin him from interfering with plaintiff in the enjoyment of the exclusive right to the use of the streets and alleys for such purposes. The trial court sitting without a jury rendered judgment for plaintiff as prayed for, and the defendant has brought the judgment here for revision.

In 1897 the village of Houston Heights formed a municipal corporation as a town or village under the provisions of chapter 11, title 18 of the Revised Statutes. In 1901 it duly organized under the general laws as a city of one thousand inhabitants or over and has since been operating as such. On March 21, 1905, the city council of said city granted to the defendant Jones a franchise to construct and operate in said city an electric light plant for the purpose of supplying electric lights to the municipality and its inhabitants. To prevent him from proceeding under that franchise and thus interfering with plaintiff's asserted exclusive right is the purpose of this suit.

The facts upon which plaintiff rests his assertion of exclusive right are as follows: In 1892 plaintiff and the Omaha and South Texas Land Company were the joint owners of 1,700 acres of unoccupied land of which the municipality in question now covers a part. On that date the owners caused the land to be subdivided and platted into lots, blocks, streets, and alleys and caused to be prepared and recorded a map showing such subdivision and the location of the streets and alleys as they now exist. In connection with the map they executed and placed of record the following deed of dedication:

"This plat and map represents a tract of about seventeen hundred (1,700) acres of land, situated in the John Austin two-league survey, near the city of Houston, in Harris County, Texas, and now and here designated as "Houston Heights," and owned partly by the Omaha & South Texas Land Company, and partly by O. M. Carter.

"The streets and alleys, as designated and marked on said plat and map, are dedicated to the use of the owners of the property in said "Houston Heights," subject, however, to the following reservations,

hereby expressly made by said Omaha & South Texas Land Company and said O. M. Carter, viz.:

"Said Land Company and O. M. Carter each hereby expressly reserves and retains in themselves, their successors, heirs and assigns, as against all the world, and especially as against all who may hereafter purchase or become the owners of lots fronting or abutting on said streets or alleys, the exclusive right to construct, maintain, repair and operate in any and all of said streets and alleys, single or double railway tracks, or both, to be operated by animal, electric, steam or other power, with overhead wires or underground appliances or power, or other powers, as the said company or the said Carter may elect.

"And the said company and the said Carter also hereby expressly reserve and retain to themselves, their successors and assigns forever, the exclusive right to do each and every act in and on said streets and alleys, including the erection of poles, stringing of wires for the operation of street railways, telephone and telegraph systems, laying of pipes, construction of conduits, and such other construction as may be necessary or convenient, in the judgment of said company and said Carter, for propelling machinery or other purposes calculated to make said Houston Heights desirable and convenient for business and residence purposes, or either, without restriction of any kind or character.

"And the said company and the said Carter each hereby reserves unto themselves, their successors, heirs and assigns, as against the world, and especially as against all parties who may hereafter purchase and become the owners of any lot or lots fronting or abutting on the said streets or alleys, or either of them, the exclusive right to lay, maintain and keep in repair in the streets and alleys of said Houston Heights, water pipes, gas pipes, steam heating pipes, compressed air pipes, and sewer pipes, and operate the same without any sort of restrictions; and also the exclusive right to erect and maintain on and along each and all of said streets and alleys, poles and string thereon electric or other wires, and to use and operate the same with electric or other power, without restriction of any kind; and also the exclusive right to build, maintain and use conduits under any and all streets and alleys, and the right to dig and excavate in said streets and alleys, for the purpose of laying pipes, railroad tracks and cables, and for the purpose of repairing the same, and also the exclusive right to construct, maintain, repair and keep in order storm water sewers, either open or closed; and all of the above rights are reserved unto ourselves, as aforesaid; the said company and the said Carter, and their successors, heirs, and assigns, are to exercise exclusively and without restraint or restriction of any kind whatever, subject to the above reservations; the streets and alleys in said Houston Heights, as the same are laid out and marked on this plat and map, are dedicated as such for the benefit of those who may hereafter purchase property in said Houston Heights, but the fee of said streets and alleys is to remain the property of said company and said Carter, subject to the use of the same for the streets and alleys, as above provided.

"Witness the corporate seal and signature of said company, and signature of said Carter this first (1st) day of October, A. D., 1892."

The location was named "Houston Heights" and was platted with the intention that the lots should be sold and that a city should grow up thereon. Lots were so sold by the original owners from time to time until 1896 when C. M. Carter acquired full title to nearly all the unsold lots and all the rights which had been reserved in the deed of dedication. He continued the sale of lots until 1901 when he sold out his entire interest to O. M. Carter.

The exclusive right sought to be reserved in the deed of dedication and asserted in this suit is assailed as void because against public policy in that it would establish a monopoly. To this the plaintiff makes two replies: First. The facts do not bring the asserted right within any accepted definition of the word monopoly; and second, the land being the absolute property of him and those under whom he claims, they had the right to part with it upon such terms as they chose to impose, the right being in the vendees of the lots and in the municipality subsequently organized simply to accept or reject.

Plaintiff advances the proposition that the term monopoly as used in the Constitution of this State means a license or privilege allowed by some sovereign authority for the sale, buying, selling or manufacture of some article or commodity whereby the subjects are restrained of a liberty they theretofore had with respect to the matter affected by the franchise. This definition is perhaps technically correct and seems to be supported by the authorities cited, among them Seeligson v. Taylor, 56 Texas, 219; Brenham v. Brenham Water Works, 67 Texas, 561. "Monopoly in its strict sense is an exclusive right granted by the State to a few of something which was before of common right." 20 Ency. of Law, p. 846.

But the term as now understood is not confined to the above limits. It embraces any combination or contract, the tendency of which is to prevent competition in its broad and general sense and to control prices to the detriment of the public, and the form assumed is immaterial. 20 Ency. of Law, p. 846.

In Brenham v. Water Company, *supra,* Justice Stayton in discussing the nature of an exclusive franchise to use the streets of Brenham for water mains, uses the following language: "It has been said . . . that there can be no monopoly in the use of a street to lay down gas or water mains, because it is not a matter of common right to use streets for such a purpose. This may be admitted without affecting the question before us. When such use, however, is but a means to the exercise of an exclusive right to sell water and to compel a city or its inhabitants to buy, it will be found difficult to separate the means from the end intended to be accomplished," and the contract was avoided for the reason that water companies could not operate without using the streets.

It seems to us, however, that when the nature of the right asserted is understood there is no room left to quibble over definitions. Its consequence, if enforced, is to bind for all time the city—for which plaintiff stood sponsor—to look to him and his assigns and to none other for light, gas, sewerage, telephones and street cars. Under the terms of the reservation he may exercise the right or not as he chooses. If he does not move in the premises he can prevent others from moving.

If he does exercise these rights, the exercise must be unrestricted from any source. We can imagine no more glaring violation of every ₊rinciple which forbids the creation of a monopoly, nor when it is considered that every right reserved affects matters of public utility and public service can we imagine one more obnoxious.

But plaintiffs press their contention that the owner of land dedicated for street purposes may in the deed of dedication annex any lawful condition not inconsistent with and destructive of the streets as such. Many authorities are cited, some of which go farther perhaps in support of the proposition than we would be willing to follow. It is not necessary, nor would it serve any useful purpose to discuss all, and we shall notice at length only those apparently applying directly to the point and which for that reason should be distinguished, if there is room for distinction.

The case of the State v. Travis Co., 85 Texas, 435, is cited. It is not in point since it does no more than recognize the well established rule that one dedicating land to use for a particular purpose may recover it for nonuse or misuse. The question whether the reversionary clause was unlawful or imposed a condition inconsistent with the use for which the property was dedicated was not up for decision.

In O'Neil v. City of Sherman, 77 Texas, 182, the city had been granted the land for street purposes only, and it was held that the land thus acquired could not be put to an inconsistent use. No other or higher right passed to the city than to use it for the purposes of a street and no other question was involved.

In Ottawa v. Larson, 40 Kansas, 301, a corporation dedicated a strip of land for a street, reserving to itself the right to construct thereon a railroad. The reservation was recognized as lawful, but it was also held that the right did not relieve the corporation from the obligation to construct its road in a lawful manner so as not to unnecessarily impair the usefulness of the street, and the principle decided may well be applied in support of the conclusion we have reached in this case, for though it be conceded that in the case before us the plaintiff by force of his reservations had the right without first procuring a franchise from the city, to use the streets for the purposes reserved, it does not follow that the right must not have been lawfully exercised, that is to say, with due respect to the necessary power of the city over its streets, and with due regard to the city's right and power to grant to others the use of the streets for like purposes. It will not do to say that the uses proposed by defendant are inconsistent with the dedication for street purposes. Light, sewers, gas and water works are among the common necessities for modern cities, and it is a matter of common knowledge that such plants can not be constructed and operated without running the lines and mains either along or across the streets. They are some of the common uses to which streets are necessarily devoted.

The case upon which appellee chiefly relies is City of Noblesville v. Lake Erie & W. Ry. Co., 130 Ind., 1, 29 N. E. Rep., 484. In that case a dedication for street purposes included a plat for a depot with lines indicating approaches for the railways. It was held that the indicated approaches amounted to a reservation for that purpose and

that the railroad company could lawfully use the street, but the controlling reason given for the holding was that it did not destroy the purposes of the grant nor prevent the municipality from exercising police powers over the place granted. Chief Justice Elliott in rendering the opinion recognized in forceful terms that "a person can not dedicate a street to public use and reserve therein a private use for an individual." He declared that in such event the dedication would be upheld and the condition adjudged ineffective, citing many authorities which we have not the time to examine and verify.

The principle is recognized by Mr. Dillon at section 629 of his work on Municipal Corporations. By Mr. Elliott in his work on Roads and Streets, pp. 108, 109. The rule is thus well stated in volume 9 of Am. & Eng. Ency. of Law, p. 75: "The right of the dedicator to annex conditions to the dedication is limited, however, by the rule that the conditions must not be such as would prevent a reasonable enjoyment of the dedication or be in any way inconsistent with such enjoyment. No condition may be annexed which will take the property from the control of the duly authorized public officers or which will in any way impair the usual exercise of the police power by the authorities. Should an attempt be made to annex such conditions the dedication will be upheld and the conditions be held void."

To the same effect is 13 Cyc., 460, and the rule as stated is so well sustained by authority we forbear further citation.

But appellee conceding this to be the rule insists that the reservation in question violates none of its terms. Let us examine some of the effects which would inevitably follow if appellee's contention should be upheld.

The appellee and his associates platted the land into streets, lots and blocks with the design that it should become a city. The lots were sold with that end in view and the prospect doubtless added to their value. The promoters gave the city its name and as indicating that they hoped and foresaw that it would become populous they reserved the rights in question. It goes without saying that they expected at some time it would become an organized municipality. One of the chiefest concerns of a city government is its streets and alleys. They call most frequently for the exercise of the police power. A common exercise of that power is to determine upon what streets and under what conditions street railways shall be constructed and operated. Gas companies, sewer companies and other public utility concerns call for the exercise of municipal control. Yet if these reserved rights be upheld, the plaintiff could construct and operate any one or all of these plants, so necessary to a city's welfare, independent of the consent or control of the city. More than this, he could refuse to construct and refuse the privilege to any other who refused to pay him the enormous value of his unbridled power. The city would be powerless to construct its own water and sewer plants. As noted before, electric light plants, gas and sewer plants can not be constructed and operated except by at least a partial use of the streets and these are a part of the commonest uses to which streets in later years are put, and all these things are commonly done under the immediate direction and control of the city authorities. Can the conclusion be escaped

that the plaintiff seeks to bind the hands of the city authorities in the respects in which it is most necessary they should be free, or that he has sought to withhold from them the control of matters of prime public importance which are not only commonly but universally under public control?

We are of opinion that the reservations insofar as they are exclusive are null both because they create a monopoly and because they unduly bind the municipal authorities in their control over the city's most important interests.

The plaintiff is now operating an electric light plant without hindrance. It is not pretended that the things the defendant proposes to do under the city's permission will interfere in any sense with the operation of plaintiff's plant except as a competitor. For the protection of the exclusive feature of the reserved right and for that alone this suit is brought.

We have entered thus fully into a discussion of the question out of deference to counsel who have presented with such force and ingenuity the opposing view. We have had, however, no difficulty in reaching the views which we announce. In the clear belief that they are sound we order that the judgment of the trial court be reversed and judgment here rendered for plaintiff in error.

*Reversed and rendered.*

Writ of error refused.