**MOSER et al. v. GREENLAND HILLS REAL-TY CO.　(No. 10078.)**

Court of Civil Appeals of Texas. Dallas. Nov. 5, 1927.

Rehearing Denied Dec. 3, 1927.

**1. Appeal and error ☜1002—Finding held conclusive on appellate court, where based on conflicting evidence.**

Finding of jury *held* conclusive on Court of Civil Appeals, where it was based on conflicting evidence.

**2. Dedication ☜55—Reservation of sewers in instrument dedicating streets held void in so far as interfering with city's police power.**

Reservation of title to sewer system in instrument dedicating streets and alleys *held* void in so far as interfering with city's control and supervision of system under its police power.

**3. Corporations ☜382—Reservation from instrument dedicating streets, of sewers by corporation without charter authority to own sewers, held void as against public policy (Rev. St. 1925, art. 1302, subd. 47; art. 6253).**

Instrument dedicating streets and alleys to public, if reserving title to sewer system to corporation which was not authorized by its charter, granted under Rev. St. 1925, art. 1302, subd. 47, to either build, own, or operate sewer system as independent enterprise, *held* in so far void as against public policy prohibiting corporation from exceeding charter powers, in view of article 6253.

**4. Dedication ☜55—Instrument dedicating streets with attempted reservation of sewers held to reserve no title but only right to make connections.**

Instrument dedicating streets and alleys to public, with attempted reservation of sewer system to corporation, *held* under facts not to reserve title to sewer system but only right to connect resident lots of the addition to the sewers; the instrument being void in so far as it might attempt to reserve title, as interfering with city's exercise of police power, and as involving corporation in matters in excess of charter powers.

**5. Dedication ☜55—Corporation dedicating streets, if reserving sewer system, held incapable of maintaining suit for value of use after parting with title to lots served by system.**

Corporation dedicating streets and alleys to public, if validly reserving title to sewer system, *held* to have lost interest therein and to be incapable of maintaining suit to recover reasonable value of use thereof, where it had parted with title to lots served by it.

On Motion for Rehearing.

**6. Corporations ☜519(3)—Corporation suing for value of use of sewer system which it attempted to reserve from dedication of streets held under evidence to have sold all lots served by system.**

Corporation suing for reasonable value of use of sewer system, which it attempted to reserve in making dedication to public of streets and alleys, *held*, under evidence, to have sold all lots in addition developed by it which were served by the sewers.

**7. Corporations ☜519(3)—In suit by corporation for value of use of sewer system, which it attempted to reserve from dedication of streets, evidence held to show that city collected for sewer service from individual lot owners (rule 31).**

In suit by corporation for reasonable value of use of sewer system which it attempted to reserve from dedication to public of streets and alleys, evidence *held* to show that city collected charges for sewer services from individual lot owners, in view of allegations admitted to be true, and unchallenged statement in brief, under rule 31.

Appeal from District Court, Dallas County; Claude M. McCallum, Judge.

Suit by the Greenland Hills Realty Company against A. C. Moser and others. From a judgment in favor of plaintiff, defendants appeal. Reversed and rendered.

Thos. G. Murname, of Dallas, for appellants.

Touchstone, Wight, Gormley & Price, of Dallas, for appellee.

LOONEY, J. Greenland Hills Realty Company was chartered under the provisions of subdivision 47, art. 1302, Revised Statutes of 1925, for the purpose of purchasing, sell-

---

ing, and subdividing real property in towns, cities, villages, and their suburbs. In February, 1923, the company purchased about 100 acres of land immediately adjoining east and north of the corporate limits of the city of Dallas, bounded on the east by what is known as Greenville or Richardson road. The company platted the land into lots, blocks, streets, and alleys under the general designation of Greenland Hills addition to the city of Dallas, and on or about March 23, 1923, the plat was filed and recorded in the deed records of Dallas county, together with an instrument dedicating the streets and alleys to the use of the public forever, except the company reserved "to itself and to its successors and assigns * * * (2) all water, storm sewer, sanitary sewer, and gas pipes and mains laid in all of said streets and alleys."

As was customary in opening such additions to the city of Dallas, it was contemplated both by the officers of the company directing its affairs and the city authorities that the addition would ultimately become part of the city, and, with that in view, application was made to the city by the company for permission to connect its sewer main serving the addition with the main sewer line of the city, which was granted, and the sewer main from this connection was extended through the streets and alleys of the Greenland Hills addition.

Shortly prior to January, 1924, appellants, who owned 68 lots in an addition to the city known as Greenville Crest, lying immediately east and across the Greenville or Richardson road from the Greenland Hills addition, also applied to the proper governing authorities of the city for permission to connect the sewerage system that served said lots with the city system, and were granted such permission upon the usual terms and conditions.

The sewer and water mains of both additions were laid under the supervision of the engineering department of the city and according to the city's standard, and, after being connected, the city collected for all connections the regular rental charge for sewer service to suburban lots.

[1] The record discloses that, before appellants connected the Greenville Crest sewerage main with that of Greenland Hills, the parties attempted to reach an agreement in regard to the connection, but the evidence is conflicting as to whether an agreement was reached, and, as the finding of the jury was in favor of the contention of appellee, the issue of a connection by agreement is out of the case. It was shown, however, that some time prior to January, 1924, appellants connected their sewer main with that of appellee, across Greenville or Richardson road, which made a continuous connection through Greenland Hills with the city sewer system, and was accepted as satisfactory by the city engineer. At the time this connection was made, appellee had sold all lots in the addition that were served by this main, and both additions had been taken in as a part of the city of Dallas prior to the institution of this suit. Appellee in its petition detailed the history of these transactions, and alleged that appellants, without permission, connected the Greenville Crest sewer system to that of the Greenland Hills system, thus avoiding the necessity of laying a line to connect with the city. Appellee sought recovery for the reasonable value to the defendants of the use of plaintiff's sewer system thus appropriated, alleged to be $3,000.

On the verdict of the jury to the effect that it would have cost the defendants the sum of $3,019 to have built a sewer line to a connection with the city's main, the court gave judgment in favor of the plaintiffs against the defendants for $3,000, with 6 per cent. interest from January 11, 1924 ($3,562.50), from which this appeal is prosecuted.

A number of interesting questions have been ably and exhaustively briefed and argued by counsel for both parties, but, as we view the matter, it will not be necessary to notice but one; that is, the proposition urged by appellants that appellee failed to either allege or prove a cause of action, in that it failed to allege or prove ownership of, or any right to possession of, the Greenland Hills sewer main.

As before stated, when these additions were platted and improved, it was contemplated that they would ultimately become part of the city of Dallas, and, with this in mind, the promoters obtained permission from the city authorities to connect their sewer systems with that of the city on condition, it seems, that all mains should be laid according to the city standard and under the supervision of its engineer.

The dedication of the streets and alleys in Greenland Hills addition was accepted by the city, all sewer and other mains were laid and connections made under the supervision of its engineer, and, after resident lots were connected, the city imposed and collected from individuals charges for sewer service.

[2] We think it is clear that appellee was authorized, as an incident to the enterprise it was prosecuting—that is, subdividing and selling lots—to improve the property, including the right to lay sewer and other utility mains and pipes and to connect with the mains as appurtenances belonging to the lots.

If it be said, however, that, after exhausting this implied power, appellee still retained ownership of the sewer system and could sell to whomsoever it pleased the privilege

of making connections from the outside, or exercise other acts of ownership and control, it occurs to us that the reservation took from the city control and supervision of the system, and materially interfered with the usual exercise of the police power of its officials.

[3] Appellant was not authorized to build and own a sewer system, except as an incident to the proper and profitable exercise of the power expressly conferred by its charter, it was not authorized to either build, own, or operate a sewer system as an independent enterprise. We are of the opinion, therefore, that, if the reservation means ownership, with its usual incidents, clearly it was against public policy. There is no policy more firmly established by the Constitution, statutes, and judicial decisions of this state than the one that prohibits a corporation from exceeding its charter powers. For the commission of such offense, quo warranto proceedings are provided. Article 6253 (6398) (4343), R. S. 1925.

In Roaring Springs Town Site Co. v. Paducah Tele. Co., 109. Tex. 452, 456, 212 S. W. 147, 148, in regard to the right of a dedicator to impose conditions or restrictions, the Supreme Court used this language:

"For, the general rule that the dedicator may impose such restrictions as he may see fit on making a dedication of his property is subject to the thoroughly established limitation that the restriction be not repugnant to the dedication or against public policy"—citing authorities.

In Jones v. Carter, 45 Tex. Civ. App. 450, 456, 101 S. W. 514, 517, the Galveston Court of Civil Appeals announced the same doctrine in an apt quotation from 9 Amer. and English Ency. of Law, p. 75, as follows:

"The right of the dedicator to annex conditions to the dedication is limited, however, by the rule that the conditions must not be such as would prevent a reasonable enjoyment of the dedication, or be in any way inconsistent with such enjoyment. No condition may be annexed which will take the property from the control of the duly authorized public officers, or which will in any way impair the usual exercise of the police power by the authorities. Should an attempt be made to annex such conditions, the dedication will be upheld, and the conditions be held void."

[4, 5] We are of the opinion, therefore, that the only interest in the sewer mains that was retained by appellant to itself, its successors and assigns, by the reservation contained in the instrument of dedication executed under the circumstances, was the right to connect resident lots of the addition to the system. However, if we should accept the view of appellee, that the legal effect of the reservation was to retain title to the sewer mains to itself, its successors and assigns, certainly it was stripped of all in-

terest when it parted with title to the lots served by the system, and its power over the subject-matter of litigation was thereby exhausted. Furthermore, the assertion of private ownership over the sewer mains necessarily took from or materially impaired the usual exercise of police power by city authorities over the sewer system and involved the exercise of powers by the corporation in excess of the purpose clause of its charter, and for these reasons we are of the opinion the reservation must be condemned as being in contravention of public policy.

We therefore sustain the assignments and proposition under discussion, reverse the judgment of the trial court, and render judgment in favor of appellants.

Reversed and rendered.

On Motion for Rehearing.

[6] 1. Appellee in its motion for rehearing challenges the correctness of several conclusions reached by this court, as shown by excerpts from the motion, as follows:

"Because the court erred in finding that all the lots in Greenland Hills, the addition owned by the Greenland Hills Realty Company, had been sold at the time the appellants connected their sewer system with the sewer system of appellee, when, as a matter of fact, the evidence shows only that the lots in that part of the addition, to which the appellee had prior to that time acquired title, had been sold and the north half of the addition was subsequently acquired."

This criticism is leveled at the following conclusion found in the original opinion of the court, to wit:

"At the time this connection was made, appellee had sold all lots in the addition that were served by this main."

This conclusion was based, on the following: Mr. Frank McNeny, president of appellee, testified, in substance, that Mr. Kline (one of the defendants) first talked with him in regard to making a connection between the sewer mains of Greenville Crest and Greenland Hills about the middle of May, 1923, and at that time practically all lots served by the sewer involved in the suit were sold, and that all were sold prior to January, 1924. According to the allegations of appellee, its cause of action accrued January 11, 1924, and in support of that allegation, it was agreed in open court that, on January 11, 1924, plaintiff (appellee) severed the connection theretofore made by appellants between these sewer mains without the consent of appellee, and on the same day, or the following day, appellants re-established this connection; hence the suit was based on the alleged unauthorized connection made at that time, to wit, January 11, 1924.

Thus it appears that the conclusion reach-

ed by this court, to the effect that, at the time the connection of the sewer mains was made, for which the suit was brought, appellee had sold all lots in the addition served by the main, was fully justified by the evidence.

[7] 2. Appellee challenges the correctness of another conclusion, as follows:

"Because the court erred in finding in its opinion that the city imposed and collected from individuals charges for sewer service when the evidence does not show this to be a fact."

This criticism is directed at the following paragraph of the opinion:

"The dedication of the streets and alleys in Greenland Hills addition was accepted by the city, all sewer and other mains were laid and connections made under the supervision of its engineer, and, after resident lots were connected, the city imposed and collected from individuals charges for sewer service."

While we do not regard this a fact of any particular materiality, it was casually mentioned as an evidentiary matter showing acceptance by the city of the dedication of the streets and alleys, etc., made by appellee, a fact abundantly shown otherwise, still the finding was justified by the following:

It was agreed in open court that certain allegations in defendant's answer should be considered as true, among others, the following: That shortly prior to January 24, 1924, the defendants, owners of the Greenville Crest addition, applied to the proper governing authorities of the city of Dallas for permission to connect with its sewer system, which was granted in accordance with the policy of the city upon the terms and conditions granted all other such additions, to wit, that said line should conform to the standard specifications and requirements of the city of Dallas, be constructed and connected under the supervision of the city engineering authorities, and that all houses or buildings connecting therewith should, from the date of connection and until said Greenville Crest should be incorporated in the city limits of Dallas, pay the regular rental charges for sewer service by the city to suburban lots. * * *

As the Greenland Hills addition had just recently been granted permission to make a similar connection, the implication in our opinion was justified that the terms prescribed for the Greenville Crest connection, one of which was that all houses and buildings connected should, from the date of such connection, pay the regular rental charges for sewer service by the city to suburban lots, was also one of the conditions on which Greenland Hills was permitted to make connection. But, aside from this, and as fully justifying this conclusion, is the unchalleng-

ed statement in the brief of appellants, at page 80, as follows:

"All the proof shows that both (the sewer mains of both of these additions) were laid under expert supervision by the same engineers in charge for both plaintiff and defendant, under the eye of the city engineers, in accordance with the standard requirements of the city, and as such, were finally approved by the city engineering authorities when the additions passed into the city of Dallas, and that prior thereto the city charged each lot owner a regular rental for sewer service."

Rule 31, for briefing, applicable to Courts of Civil Appeals, among others, has this provision:

"If the statement from the record thus made is not distinctly challenged by the opposing party, it may be accepted by the court as correct."

As this statement was not challenged by appellee, and in our opinion was an authorized inference from the agreement made in open court above quoted, we adhere to the correctness of the conclusion announced.

3. Appellee makes this further criticism of the court's opinion, to wit:

"Because the court erred in finding that the reservation in the title to the sewer system built by the appellee took from the city control and supervision of such sewer system. This finding by the court is not supported by any testimony in the record, and such a conclusion is unjustified by any facts in the record."

The conclusion objected to is one of law rather than of fact. If, as contended by appellee, title to the sewer system remained in it after the dedication and after it parted with title to all lots in the addition, as such owner it could grant to whomsoever it pleased the privilege of making connections and otherwise exercise acts of ownership and control, which, if done, would necessarily interfere with the city's control. It must be borne in mind that, when these systems were connected with the sewer system of the city, it was contemplated by all parties that ultimately the additions would become a part of the city, and that it would then become the owner of the sewer mains, which is now the case, and, with this in view, the city permitted connections upon the conditions mentioned. If, after all this, it be true that appellee remained the owner of the system, the conclusion is inescapable that the exertion of its ownership in the various ways that an owner could exert the same would necessarily interfere with the proper exercise of authority by the city in controlling, supervising, and policing the sewer system.

We have carefully considered all grounds for rehearing urged by appellee, and, finding no reason to disturb our decision, the motion is overruled.