# MAY, 1919

### ROARING SPRINGS TOWNSITE CO. v. PADUCAH TELEPHONE CO.

#### No. 2690. Decided May 7, 1919.

1.—Charter—Telephone—Purpose Clause—Implied Powers.

A charter expressing the purpose of the incorporators to be "operating a long distance telephone line" conferred on the corporation by implication the power to construct and maintain such line. (Mr. Justice Hawkins dissenting.) (Pp. 454, 455, 457-461.)

2.—Public Street—Dedication—Acceptance.

The dedication to the use of the public by a townsite company laying off land in streets and blocks and selling lots thereon was not ineffective for want of acceptance or of a grantee in existence, though the contemplated municipality had not yet been organized, for want of sufficient population. (Pp. 455, 456.)

3.—Street—Dedication—Reservation of Control.

The right of a dedicator of land to public use as a street to impose such restrictions as he may see fit in making the dedication, is subject to the limitation that the restriction be not repugnant to the dedication nor against public policy. (P. 456.)

4.—Same—Control of Telephone Construction.

A corporation empowered to construct and maintain a long distance telephone line, having the authority (Rev. Stats., art. 1911) to erect same upon public streets, can use for such purpose streets dedicated as such by a townsite company by laying out same and selling lots thereon, though the contemplated town had not yet been organized, and, though the townsite company in dedicating such streets had attempted to reserve to itself the exclusive powers to grant for a valuable consideration, the right, among other privileges, to construct a telephone line thereon. (Pp. 455, 456.)

5.—Telephone Company—Eminent Domain.

A company having power, though only by implication from the purpose stated in its charter (to operate), to construct and maintain a long distance telephone line, had authority, under art. 1232, Revised Statutes, to condemn land for such purpose. (P. 456.)

Error to the Court of Civil Appeals for the Seventh District, in an appeal from Cottle County.

The Townsite Co. sued the Telephone Co. for injunction, and appealing from a judgment for defendant, obtained writ of error on its affirmance.

*Decker & Clarke,* for plaintiff in error.

Telephone corporations whose chartered powers . are limited to the operation of telephone lines are not authorized by any law in Texas to exercise the right of eminent domain, and injunction will lie to prevent such a corporation from taking and using land even though it had sought to condemn such land and special commissioners had assessed damages. Rev. Stats., art. 642, sec. 8, 698, 699; Bridge Co. v. McLane, 28 S. W., 454; O'Neal v. Sherman, 77 Texas, 184; Adams v. Waterworks Co., 25 S. W., 605; In re Poughkeepsie Bridge Co., 108 N. Y., 483; Cummings v. Kendall Co., 26 S. W., 439; Ramsey v. Tod, 69 S. W., 133; Hardware Co. v. Perry Stove Co., 24 S. W., 16; 1 Thompson, Corporations, sec. 231; Lewis, Eminent Domain, sec. 240; Thomas v. Railway Co., 101 U. S., 81; Bank v. Davies, 43 Iowa, 424; Langan v. Construction Co., 49 Iowa, 317; Jessup v. Carnagie, 80 N. Y., 441; Rev. Stats., 1895, art. 643.

. Where the owner of land plats a townsite thereon, dedicates to public use the streets and alleys with the reserved right to designate who should use the streets and alleys for telephone purposes, a telephone company should be restrained from erecting poles on and over said streets and alleys over objection of the owner of the land where the town is only a few weeks old, has no municipal form of government, and the owner of the land tenders the use of the streets upon payment of a reasonable compensation and the erection of the line so as not to incommode the public use of the streets and alleys, and alleges in petition for injunction that the reservations in the deed are not made for the purpose of creating a monopoly. Rev. Stats., art. 698; State v. Travis County, 85 Texas, 435; Buffalo v. Delaware, etc., Ry. Co., 39 N. Y. Supp., 4; Ayers v. Penn. Ry. Co., 57 Am. Rep., 538; O. P. & T. Ry. Co. v. Dunham, 88 S. W., 849; 13 Cyc., 459, 460; Railway Co. v. Larson, 40 Kansas, 301; O'Neal v. City of Sherman, 77 Texas, 182; Jones v. Carter, 101 S. W., 514.

*T. T. Bouldin,* for defendant in error.

In an expressed grant of power to a corporation there is implied a power to do whatever is necessary or reasonably appropriate to the exercise of the authority expressly conferred. Dillard v. McAdams Lumber Co., 141 S. W., 1023.

Where the owners of land plat the same, wherein they lay off lots, blocks, streets and alleys and dedicate the streets and alleys to public use, a reservation in the deed of dedication wherein they attempt to reserve the right to control the streets and alleys as to the construction, maintenance and operation of telephone lines and telephone systems is against public policy and void. Jones v. Carter, 101 S. W., 514; Brenham v. Brenham Waterworks, 67 Texas, 542; 20 Ency. of Law, 846.

Mr. Justice GREENWOOD delivered the opinion of the court.

Plaintiff in error applied for a temporary injunction to restrain defendant in error from constructing a telephone line across a section of land, which belonged to plaintiff in error in Motley County. One hundred and sixty acres, near the center of the section, had been subdivided into lots, blocks, streets and alleys, for a townsite, and both by plat and deed the streets and alleys had been dedicated to public use, by plaintiff in error; provided, however, that plaintiff in error undertook to reserve to itself the exclusive right to grant, for a valuable consideration, to any person or corporation the right to use the streets and alleys to construct telephone, telegraph and electric light wires and poles, and gas, water and sewer mains. Some of the town lots had been sold by plaintiff in error, but there have not been sufficient residents of the townsite to form a municipal government. Defendant in error had incorporated for the purpose of operating a system of telephone lines, both local and long distance in Cottle County, and long distance in Motley, Dickens, Childress and Foard Counties, and had begun erecting poles and stringing wires in and over the streets and alleys of the aforesaid 160 acres of land, and along a certain right of way over the remainder of the aforesaid section, which it had undertaken to condemn by certain proceedings against plaintiff in error, in the County Court of Motley County, which were claimed to be invalid on various grounds but principally on the ground that defendant in error did not possess any right to exercise the power of eminent domain.

Plaintiff in error's right to the injunction must rest either upon an invasion by defendant in error of a valid reservation by plaintiff in error of exclusive right to grant the use of the streets and alleys in the townsite to a corporation operating a long distance telephone line, or upon an unlawful infringement upon its title and possession as owner of the portion of its section of land outside of the townsite.

As heretofore construed, article 1231 of our Revised Statutes declares it to be the public policy of the State that corporations created for the purpose of constructing and maintaining long distance telephone lines, shall be authorized to construct their poles, wires, etc., upon any of the public roads, streets and waters of the State, in such manner as not to incommode the public in the use of the roads, streets and waters, and this statute is a declaration that the Legislature considers the interest of the public in convenient telephone service superior to any private interest. City of Brownwood v. Brown Tel. & Tel. Co., 106 Texas, 116, 157 S. W., 1163.

There are no averments of sufficient facts to support any claim that the public would be incommoded in its use of the townsite streets and alleys by defendant in error's poles or wires, but it is denied by plaintiff in error that defendant in error is a corporation created to construct and maintain a long distance telephone line or that the streets and alleys of the townsite are public streets or roads within the true meaning of article 1231.

We think that a corporation organized for the express purpose of

operating a long distance telephone line possesses the power, and hence may properly be treated as "created for the purpose, of constructing and maintaining" such line. For the maintenance of the line is necessary to the operation thereof, and the construction of the line is a direct and usual method of procuring it for maintenance and operation. No one now doubts that the law is correctly declared when it is said in Northside Ry. Co. v. Worthington, 88 Texas, 569, 53 Am. St., 778, 30 S. W., 1056: "Corporations are the creatures of the law, and they can only exercise such powers as are granted to them by the law of their creation. An express grant, however, is not necessary. In every express grant there is implied a power to do whatever is necessary or reasonably appropriate to the exercise of the authority expressly conferred. . . . In short, if the means be such as are usually resorted to and a direct method of accomplishing the purpose of the incorporation, they are within its powers; if they be unusual and tend in an indirect manner only to promote its interests, they are held to be ultra vires."

In our opinion, streets in a townsite, which have been dedicated to public use, in the manner shown by the petition of plaintiff in error, are subject to the operation of the statute.

The contention is without merit that the dedication to the public of the streets and alleys must fail for want of acceptance by a municipality embracing the 100 acres. The court in Atkinson v. Bell, 18 Texas, 474, announced that a dedication to the public would not be defeated for want of an accepting grantee, adopting the rule on that subject expounded in City of Cincinnati v. the Lessees of White, 6 Peters, 432, 8 L. Ed., 452, as follows: "Dedications of land for public purposes have frequently come under the consideration of this court; and the objections which have generally been raised against their validity have been the want of a grantee competent to take the title; applying to them the rule which prevails in private grants, that there must be a grantee as well as a grantor. But that is not the light in which this court has considered such dedication for public use. The law applies to them rules adopted to the nature and circumstances of the case, and to carry into execution the intention and object of the grantor, and secure to the public the benefit held out, and expected to be derived from, and enjoyed by the dedication. It was admitted at the bar, that dedications of land for charitable and religious purposes, and for public highways, were valid, without any grantee to whom the fee could conveyed. Although such are the cases which most frequently occur and are to be found in the books, it is not perceived how any well-grounded distinction can be made between such cases and the present. The same necessity exists in the one case as in the other, for the purpose of effecting the object intended. The principle, if well founded in the law, must have a general application to all appropriations and dedications for public use, where there is no grantee in esse to take the fee. But this forms an exception to the rule applicable to private

grants, and grows out of the necessity of the case. In this class. of cases there may be instances, contrary to the general rule, where the fee may remain in abeyance until there is a grantee capable of taking, where the object and purpose of the appropriation look to a future grantee in whom the fee is to vest. But the validity of the dedication does not depend on this; it will preclude the party making the appropriation from reasserting any right over the land, at all events so long as it remains in public use; although there may never arise any grantee capable of taking the fee." The doctrine is again approved in Parisa v. City of Dallas, 83 Texas, 258, 18 S. W., 568.

The substance of the opinion in the case of the City of Corsicana v. Zorn, 97 Texas, 323, 78 S. W., 925, as applied to the facts of this case, is that plaintiff in error's deed of dedication had the effect to invest in the purchasers of townsite lots and their assigns the right for themselves and for all others to forever use the streets and alleys; with the duty of enforcing such right imposed on any incorporated town or city which might be later so formed as to include the streets and alleys. The objection of the former owner in that case, that there had been no acceptance of the dedication of the streets and alleys, was thus disposed of: "There was no necessity for such acceptance, for the right which vested in the purchasers of the different lots and through them in the public was irrevocable." The public is as much interested in being afforded convenient means of long distance telephone communication, through the utilization of streets and alleys dedicated to the use of the public, before as after the streets and alleys are subject to municipal control, and we can see no good reason for denying the salutary benefits of article 1235 from the time the streets and alleys are impressed with the public use.

Having determined that under the public policy of the State, a corporation formed to operate a long distance telephone line was clothed with the authority to construct and maintain its poles and lines along the dedicated streets and alleys in an unincorporated townsite, the attempt to reserve to plaintiff in error a right inconsistent with such authority can not be upheld. For, the general rule that the dedicator may impose such restrictions as he may see fit on making a dedication of his property is subject to the thoroughly established limitation that the restriction be not repugnant to the dedication or against public policy. 13 Cyc., 460; Richter v. Granite Mfg. Co., 107 Texas, 63, L. R. A., 1916A, 504, 174 S. W., 284; McDaniel v. Puckett, 68 S. W., 1011; Jones v. Carter, 45 Texas Civ. App., 450, 101 S. W., 514; Koenigheim v. Miles, 67 Texas, 121, 2 S. W., 81; Richards v. Cincinnati, 31 Ohio St., 513.

The power of eminent domain is expressly conferred on long distance telephone companies by article 1232, R. S., and the averments of plaintiff in error's petition are wholly insufficient to show any invalidity in the condemnation proceedings conducted by defendant in error.

It follows that plaintiff in error failed to show that it was entitled

to the injunction which it sought, and the judgments of the District Court and of the Court of Civil Appeals are affirmed.

*Affirmed.*

### DISSENTING OPINION.

MR. JUSTICE HAWKINS delivered the following dissenting opinion:

A dedication of streets and alleys is operative even in the absence of formal acceptance of the grant. The attempted reservation of rights in the dedicated streets and alleys is void, because in conflict with the broader purpose and with the terms of the grant, and because contrary to public policy as reflected by R. S., art. 1231. To such streets that statute applies, and over them it gives right of way, to "corporations created for the purpose of constructing and maintaining magnetic telegraph lines."

The quoted descriptive phrase includes, generically, magnetic telephone lines. San. Antonio & A. P. Ry. Co., 93 Texas, 313, 77 Am. St., 884, 49 L. R. A., 459, 55 S. W., 171. Consequently, if the purpose clause of this telephone company authorizes it to *construct* and *maintain* long distance telephone lines, it is entitled to a right of way over the streets of said townsite; City of Brownwood v. Telephone Co., 106 Texas, 114, 157 S. W., 1165; but not so if the legal effect of its charter is to limit its corporate powers to the mere *operation* of telephone lines, withholding and denying authority to *construct* and *maintain* such lines.

Furthermore, corporations of the class so defined by article 1231 are within the operation of our condemnation statutes, and thereby are privileged to exercise the sovereign power of eminent domain. R. S., art. 1232. If this telephone company is within that favored class, it has a legal right to condemn a right of way across the unplatted portion of the townsite company's land; but, unless it falls within the stated classification, it is not within the purview of our condemnation statutes, and, therefore, can not legally exercise that power of eminent domain. But does a charter power to "operate" telephone lines include, *by implication,* statutory power to construct and maintain such lines, and, by reference, power to condemn privately owned lands? More concretely, under our statutes and the purpose clause of this telephone company's charter, has the State clothed that corporation with power and authority to *construct and maintain* telephone lines, and to condemn land therefor, as well as to "operate" them? That is the only feature of this case upon which I dissent. The majority opinion in both its branches—as to right of way over said streets and also as to right of way over said unplatted land—rests, ultimately, upon an affirmative answer to my foregoing questions; but I think those questions should be answered negatively. How can a part include the whole of anything?

If the issue thus presented involved merely a construction of the purpose clause of said charter in the light of our general incorporation

statute alone, the question would be serious enough; but it is doubly important in that in deciding it we must determine also whether the benefits of condemnation statutes shall be thereby extended, *by construction and implication,* to include a corporation operating, as does defendant in error, under a charter whose purpose clause fails to enumerate, specifically, any expressly designated statutory purpose in furtherance of which our condemnation statutes, by their own terms, or by express reference, expressly run.

Said charter rests, for authority, solely upon R. S., art. 1121, sub. 8, wherein our general incorporation law declares: "The purposes for which private corporations may be formed are: . . . the construction and maintenance of a telegraph and telephone line." The purpose clause of said charter declares: "This association is formed for the purpose of operating a through system of telephone lines," etc. It does not use the word "construct," or the word "maintain," or any derivative of either of them. Nowhere does our law expressly authorize the formation of a corporation for the purpose of "operating" a telegraph or telephone line. Unquestionably the quoted phraseology of said charter is not expressly or specifically authorized by law, and does not expressly clothe that corporation with power or authority to *construct and maintain* a telephone line, and, consequently, does not bring defendant in error clearly under the operation of either article 1231 relating to public streets or article 1232 relating to condemnation proceedings. Conversely, if defendant in error is entitled to the benefit of either and both of those statutes, as my associates declare it is, it enjoys those privileges solely upon the theory that, *by construction and implication,* a charter which purports to authorize a corporation to "operate" a telephone line confers upon that corporation full statutory power and authority to *construct,* originally, and to *maintain,* a telegraph line, embracing, as a consequence, and by virtue of articles 1231-2, the high powers of eminent domain therein conferred upon "corporations created for the purpose of *constructing and maintaining* magnetic telegraph lines."

If the majority opinion is sound, in so holding, then, for like reasons, and for the added reason that R. S., art. 6405, which authorizes the incorporation of railroad companies, expressly uses the word "operating," a charter simply declaring the purpose of a corporation to be to "operate" a railroad from Brownsville to Texarkana would confer upon such corporation, under R. S., art. 6405, full statutory authority for "constructing, owning, maintaining and operating such railroad," including, of course, the right, given by arts. 6506-6522, to railroad companies to condemn land for right of way, etc. The argument is that "operate," as used in said charter, includes "construct and maintain"—as those words, or their quoted derivatives, are used in our incorporation statutes. Etymologically the words "operate" and "construct" have essentially different meanings, and "operate" signifies working something already *constructed.* *Construction* ends before *op-*

*eration* begins; the latter begins where the former ends. The terms are complementary—not synonymous. As stated in the opinion of Judge S. P. Sadler, of Section B of our Commission of Appeals, to which this cause was referred by this court, the word *operate* "pertains to output and does not include machinery necessary to the construction of a plant. Authority to issue bonds to purchase and construct does not cover the issuance of bonds to maintain and operate. Words and Phrases, vol. 6-4989, 2d series, vol. 3, 743." As defined by lexicographers, and in the language of the plain people, the words mentioned have radically different primary significations. As used in art. 6405 they are, very plainly, not synonymous; and, in my opinion, they are not interchangeable within contemplation of articles 1121, 1231 and 1232, supra. I am not familiar with any canon of construction, or decision, which supports that view that "operate" and *construct* and *maintain,* and their derivatives, are synonymous, and, therefore, interchangeable, in the purpose clause of the charter of the telephone company or of any other corporation, and none is cited in the majority opinion in this cause. Upon that point I have not time now to search the books. In said opinion we are referred to the Northside Railway Case. The only cognate principle enunciated in that decision is to the effect that a duly chartered corporation may have and exercise fairly implied powers in addition to the powers expressly enumerated in and conferred by its charter and the statutes; and that, of course, is sound. But that decision is not authority for the conclusion announced by my associates to the effect that power to "operate" a telephone line carries power to *construct* and *maintain* such line. The doctrine of that cited case relative to implied powers has no direct application to this case. Here the telescope is reversed, in a sense, the present issue being, simply, whether a corporation whose charter sets out, in its purpose clause, only one purpose which is not even specifically mentioned in our general incorporation statute, and which, if it is permissible at all, is so solely because it is an implied power of corporations when duly chartered under said subdivision 8 of art. 1121, really has, and legally may exercise, all the several powers enjoyed by a corporation, the purpose clause of whose charter follows the precise phraseology of the statute.

I can see no good reason for holding that a charter purpose clause which sets out only one of several expressly enumerated statutory purposes should be held to confer upon the corporation all of the powers wrapped up in all such statutory purposes; and the same reasoning applies, with added force, when, as in this instance, the purpose clause of the charter mentions not even one expressly stated statutory purpose, but, in lieu of the statutory terms, employs one which, at most, carries only an *implied* power which a properly chartered corporation of such general character would have merely as an incident of expressly enumerated statutory powers specifically mentioned in its charter.

If a corporation desires to have and exercise all the powers enumerated in any particular subdivision of art. 1121, it may acquire them by

simply inserting such powers in the purpose clause of its articles of incorporation in *haec verba,* or in substance; and if, through design or oversight,. it fails to do so, it should be held by the courts to its own election, and, accordingly, should be denied the exercise of powers which, though within its grasp, it never claimed when asking of the State, its creator, power to be and power to do. And especially, it seems to me, is that view of the subject applicable in cases like this, wherein is involved the question as to the power of the courts to extend to such negligent or very modest corporation, purely by *construction* and *implication,* the rights of eminent domain.

In line with my views of this subject this court, through Gaines, J., afterward Chief Justice, said: "The matter of condemning property for reservoirs is not named in the title to the act; nor is it, as we think, expressed by the mention of 'water mains.' The former term is not comprehended within the latter. They are in no respect synonymous; and the things they represent, though intimately connected with their actual use, are distinctly different. Their relation to each other, and their connection in ordinary use,—the necessity of one to the other which may exist under certain circumstances,—may evince the intention of the Legislature to make the law applicable to both. But it is not with a question of intention we have to deal. The inquiry is not what the Legislature intended to embrace in the title, but what, by the terms employed, it did, in fact, embrace. . . . The statute under consideration is void in so far as it attempts to authorize the condemnation of property for reservoirs and standpipes." Adams & Wickes v. San Angelo Waterworks Co., 86 Texas, 485, 25 S. W., 605.

There the effect of a statute was restricted to the area defined in its caption; here, according to my own individual view of the matter, the effect of a charter should be limited to the fair and ordinary meaning of the words actually employed in its purpose clause. The public policy of this State, as reflected by our State Constitution, and by our statute laws, and by our decisions, has been, traditionally, to restrict corporations to the exercise of only such powers as they clearly possess. The action of this court, in this case, seems to me to go to an extreme opposite. The pendulum seems to have swung far back since the decision of this court in Smith v. Wortham, Secretary of State, 106 Texas, 106, 157 S. W., 740, wherein I thought this court, as then constituted, construed art. 1121 too strictly, even though that case presented no question as to the applicability of our condemnation statutes.

The report of the Commission of Appeals on this case is to the effect that the alleged dedication of streets in said townsite is inoperative, for lack of acceptance; that the telephone company was invading the property rights of the townsite company; and that, under the peculiar phraseology of its charter, the telephone company is destitute of the right of eminent domain; upon which conclusions followed the recommendation that the case be reversed and remanded to the trial court.

Its conclusion as to the restricted signification and legal effect which

should be given to "operate" in said charter is in line with the views herein expressed; and in stating them I have drawn freely upon said Commission's opinion.

While I do not approve the Commission's view as to the effect of the attempted dedication of streets, my general conclusion is that defendant in error is not within the operation of articles 1231-2, and that the writ of injunction should have been granted; wherefore said recommendation of the Commission of Appeals should be adopted by this court.