

# THE ATTORNEY GENERAL

## OF TEXAS

**AUSTIN 11, TEXAS**

PRICE DANIEL
ATTORNEY GENERAL

October 10, 1951.

Hon. J. M. Falkner, Commissioner
State Department of Banking
Austin, Texas      Opinion No. V-1311.

           Re: Applicability of Senate
               Bill No. 339, Acts 52nd
               Legislature, 1951, to
               loan and brokerage com-
               panies organized under
               Sections 48, 49, and 50
               of Article 1302 and un-
Dear Sir:             der Article 1303b, V.C.S.

        Your request for an opinion reads, in part, as fol-
lows:

        "Assuming that Senate Bill No. 339 passed
at the last Session of the Legislature is or
will subsequently be held to be a valid law,
will it be necessary for loan and brokerage com-
panies, heretofore organized under Article 1302,
1303b, having a capital stock of $50,000.00 as
required in Senate Bill 339, to amend their
charters, or can they enjoy the additional priv-
ileges granted under Senate Bill 339 without
an amendment?"

        Senate Bill 339, Acts 52nd Leg., 1951, ch. 472, p.
832, provides in part:

        "Section 1. Corporations heretofore formed
or hereafter to be formed for the purposes speci-
fied in Sections 48, 49, and 50 of Article 1302
and Article 1303b, Revised Civil Statutes of the
State of Texas for 1925, and having a minimum paid-
in capital of Fifty Thousand ($50,000.00) Dollars
shall, in addition to the powers conferred upon
corporations by the general corporate law, have
the following powers. . . ."

        The additional powers granted to those corporations
mentioned in the first paragraph of Section 1 are set out in

detail along with the obligations which attach to the exercise of the enumerated powers. Senate Bill 339 is a comprehensive set of regulations for loan and brokerage companies, and most parts of it have no bearing upon the question presented here; hence the statute will not be quoted.

Subsections 48, 49, and 50 of Article 1302, V.C.S., authorize corporations to be formed for the following purposes:

"48. To accumulate and lend money without banking or discounting privileges."

"49. For any one or more of the following purposes: To accumulate and lend money, purchase, sell and deal in notes, bonds and securities, but without banking and discounting privileges; to act as trustee under any lawful express trust committed to them by contract and as agent for the performance of any lawful act."

"50. To subscribe for, purchase, invest in, hold, own, assign, pledge and otherwise deal in and dispose of shares of capital stock, bonds, mortgages, debentures, notes and other securities, obligations, contracts and evidences of indebtedness of foreign or domestic corporations not competing with each other in the same line of business; provided the powers and authority herein conferred shall in no way affect any provision of the anti-trust laws of this State."

Article 1303b, V.C.S., provides:

"A private corporation may be formed for any one or more of the following purposes; without banking or insurance privileges; to accumulate and loan money; to sell and deal in notes, bonds and securities; to act as Trustee under any lawful express trust committed to it by contract or will, or under appointment of any court having jurisdiction of the subject matter, and as agent for the performance of any lawful act; to subscribe for, purchase, invest in, hold, own, assign, pledge and otherwise deal in and dispose of shares of capital stocks, bonds, mortgages, debentures, notes and other securities or obligations, contracts and evidence of indebtedness of foreign or domestic corporations not competing with each other in the

same line of business; to borrow money or is-
sue debentures for carrying out any or all
purposes above enumerated. Provided that the
power and authority herein conferred shall in
no way affect any of the provisions of the
anti-trust laws of this state."

Article 1318, V.C.S., provides:

"All charters or amendments to charters,
under the provisions of this Chapter, shall
be subject to the power of the Legislature to
alter, reform or amend the same."

A question very similar to that under considera-
tion was involved in State v. San Antonio Public Service Co.,
69 S.W.2d 38 (Comm. App. 1934). In that case a statute pro-
vided that any corporation operating a street or suburban
railway could operate motor vehicles to carry passengers for
hire within the city or town or within five miles thereof.
The public service company operated busses under the statute,
but failed to amend its charter to include this purpose. In
holding that the company was authorized to operate the busses,
the Court said:

"The state contends, however, that in
any event appellant was required to amend its
charter after the enactment of Article 6548
in 1923, so as to avail itself of its provi-
sions. This contention is not sustained. Ar-
ticle 6548 is a part of the title 'Railroads'
of the R.S. 1925, and is not a subdivision of
article 1302, relating to the purpose clauses
of corporations. It specifically authorizes
an electric motor street railway corporation
like appellant to operate gasoline propelled
motor vehicles in connection with its street
railway business. The law is settled that the
powers of a corporation organized under gen-
eral laws are not determined alone from its
charter provisions, but are also determined
from the law under which it is organized or
operates. It is also settled law that it is
not necessary for the charter of a corpora-
tion to contain all the powers conferred by
statute; nor is it necessary to amend the char-
ter of a corporation to include powers confer-
red solely by statute, unless the act itself

requires the amendment. Roaring Springs Town-
site Co. v. Paducah Tel. Co., 109 Tex. 452,
212 S.W. 147; Texas Central Power Co. v. Jolly
(Tex. Civ. App.) 246 S.W. 420; Kuehler v. Tex.
Power Corporation (Tex. Civ. App.) 9 S.W. (2d)
435; Mathis v. Pridham, 1 Tex. Civ. App. 58,
20 S.W. 1015; Wichita Falls Traction Co. v.
Raley (Tex. Civ. App.) 17 S.W.(2d) 157; Thomp-
son on Corporations (3d Ed.) § 188." (69 S.W.
2d at 45.)

We think the answer to your question is controlled
by the law announced in the above case. The appellent in
that case had no power to operate motorbusses until such
power was conferred upon it by the act creating Article 6548,
which act did not specifically require appellant to amend its
charter to include the powers so conferred before it could
exercise them. The Court held that appellant was not required
to amend its charter before exercising the power to operate
motorbusses, for such power was specifically granted by Arti-
cle 6548.

This holding is in accord with the following state-
ments of the rule set forth in Texas Jurisprudence and Ameri-
can Jurisprudence:

"The effect of a general statutory grant is
to invest the corporation with the power as fully
and effectually as if it were set out at length
in its charter." (10 Tex. Jur. 863, Corporations,
Sec. 234.)

"The charter of a corporation organized un-
der a general act consists of the provisions of
the existing state constitution, the particular
statute under which it is formed and all other
general laws which are made applicable to corpor-
ations formed thereunder and of the articles of
association or incorporation filed thereunder, as
the charter or certificate of incorporation
granted by the Court or officer in compliance
with its terms, although the provisions of such
laws are not embodied in the charter, and the
powers, rights, duties, and liabilities of the
corporation are determined accordingly." (18 C.
J.S. 422, Corporations, Sec. 43.)

Your question pertains only to corporations which have a minimum capital stock of $50,000 and which were formed prior to September 7, 1951, the effective date of Senate Bill 339, for the purposes specified in Sections 48, 49, and 50 of Article 1302 and in Article 1303b. Senate Bill 339 specifically provides that such corporations shall have, in addition to the powers conferred upon corporations by the general corporate law, the powers therein enumerated. This bill does not specifically require any corporation to which it applies to amend its charter to include the powers so conferred before it may exercise them.

You are therefore advised that corporations formed prior to September 7, 1951, for the purposes specified in Sections 48, 49, and 50 of Article 1302 and in Article 1303b, V.C.S., and having a minimum paid-in capital of $50,000, may exercise the additional privileges granted them by Senate Bill 339, supra, without amending their charters to include the privileges so conferred.

In answering your question, we have not considered the constitutionality of Senate Bill 339, since your question is based upon an assumption of constitutionality and does not require our consideration thereof at this time.

## SUMMARY

Corporations formed prior to September 7, 1951, the effective date of Senate Bill 339, Acts 52nd Leg., R.S. 1951, ch. 472, p. 832, for the purposes specified in Sections 48, 49, and 50 of Article 1302 and in Article 1303b, V.C.S., and having a minimum paid-in capital of $50,000, may exercise the additional privileges granted them by Senate Bill 339 without amending their charters to include the privileges so conferred. San Antonio Public Service Co. v. State, 69 S.W.2d 38 (Comm. App. 1934).

APPROVED:                                    Yours very truly,

C. K. Richards                               PRICE DANIEL
Trial & Appellate Division                   Attorney General

Jesse P. Luton, Jr.
Reviewing Assistant

Charles D. Mathews                           By
First Assistant                                  Bruce W. Bryant
BWB:wb                                               Assistant