**SOUTHWESTERN BELL TELEPHONE COMPANY, Plaintiff,**

v.

**CITY OF EL PASO and El Paso County Water Improvement District No. 1, Defendant.**

**No. 98–CA114EP.**

United States District Court,
W.D. Texas,
El Paso Division.

Aug. 23, 2001.

---

Jeffrey S. Alley, Scott & Hulse, El Paso, TX, Barbara Russell Hunt, Dallas, TX, Robert Edwin Davis, Hughes & Luce, Dallas, TX, Weston C. Loegering, Hughes & Luce, L.L.P., Dallas, TX, David Randall Johnson, San Antonio, TX, for plaintiff.

Larry R. Veselka, Smyser Kaplan & Veselka, Houston, TX, Benjamin L. Hall, III, Houston, TX, Laura Gordon, El Paso, TX, Myles Sean Hall, El Paso, TX, for defendant.

## ORDER

PRADO, District Judge.

On this date the Court considered Defendant El Paso County Water Improvement District No. 1's Motion for Summary Judgment, Plaintiff Southwestern Bell Telephone Company's Motion to Dismiss Counterclaim and Motion for Summary Judgment.

### Background and Procedural History

Southwestern Bell Telephone Company ("SWBT"), a provider of telecommunications services holding a certificate of convenience and necessity issued by the Public Utility Commission of Texas ("PUC"), brought this suit for declaratory and injunctive relief against the City of El Paso ("City"). In its original petition, SWBT sought declarations that (1) a proposed city ordinance that would require SWBT to pay the City 5% of all gross revenues from services to customers within El Paso violated the Federal Telecommunications Act of 1996, 47 U.S.C. § 151 et seq., ("FTA"); (2) certain buyout provisions of a then-current ordinance as well as the proposed ordinance also violated the FTA; (3) the proposed ordinance violated the Texas Public Utilities Regulation Act, Title II of the Texas Utilities Code, ("PURA"); (4) the buy-out provisions violated Article 1416 of the Texas Revised Civil Statutes; (5) no SWBT property would be subject to the buyout provisions; and (6.) the buyout provision is unenforceable.

El Paso County Water Improvement District No. 1 ("EPCWID") was added as a Defendant in SWBT's First Amended Complaint. The District is a water improvement district operating under Article XVI, Section 59 of the Texas Constitution. At the center of the controversy between SWBT and the District is a series of irrigation ditches deeded from the United States Bureau of Reclamation to EPCWID in January 1996. Development in the area of the ditches has resulted in a number of roads being built crossing ditches and has also resulted in an increase in demand for telephone service.

EPCWID has established certain application procedures for entities wanting to cross its canals, laterals and ditches.

These procedures require an entity, such as SWBT, to complete an application, pay an application fee of $500 and obtain a survey. Before the survey is ordered, EPCWID's Board of Directors must preliminarily approve the application. After the survey is completed, the Board assesses a charge, which can be determined on an ad hoc basis, based on the length of the crossing.

In its claims against EPCWID, SWBT seeks declaratory relief, arguing that (1) EPCWID's application procedures and fees violate both FTA and PURA; (2) roads and highways crossing EPCWID's ditches, laterals and canals are public roadways; (3) EPCWID has no right to charge for telephone lines crossing its canals, laterals and ditches when those lines are within the rights-of-way of city or county roads; (4) the water flowing through EPCWID's canals and ditches is public; and (5) EPCWID has no right to charge for telephone lines crossing public waters. EPCWID filed a counterclaim, alleging that SWBT has trespassed on its property, or alternatively, that SWBT has taken its property for public use without compensating EPCWID.

SWBT and the City have settled their claims, leaving EPCWID as the only defendant remaining in the case. EPCWID and SWBT have each filed motions for summary judgment.[1] SWBT has also filed a motion to dismiss EPCWID's counterclaims. Although filed separately, the motions and responses essentially concern the same issues. Therefore, the Court will address several general issues before addressing specific issues raised by the motions.

**Summary Judgment Standard**

In the usual case, the party who seeks summary judgment must show by affidavit or other evidentiary materials that there is no genuine dispute as to any fact material to resolution of the motion. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 n. 4, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Lavespere v. Niagara Machine & Tool Works, Inc.,* 910 F.2d 167, 178 (5th Cir.1990); *Fontenot v. Upjohn Co.,* 780 F.2d 1190, 1194 (5th Cir.1986). To satisfy this burden, the movant must either submit evidentiary documents that negate the existence of some material element of the nonmoving party's claim or defense or, if the crucial issue is one for which the nonmoving party will bear the burden of proof at trial, merely point out that the evidentiary documents in the record contain insufficient proof concerning an essential element of the nonmoving party's claim or defense. *See Celotex Corp.,* 477 U.S. at 325, 106 S.Ct. 2548; *Lavespere,* 910 F.2d at 178.

Once the moving party has carried that burden, the burden shifts to the nonmoving party to show that summary judgment is not appropriate. *See Fields v. City of South Houston,* 922 F.2d 1183, 1187 (5th Cir.1991). The nonmoving party cannot discharge this burden by referring to the mere allegations or denials of the nonmoving party's pleadings; rather, that party must, either by submitting opposing evidentiary documents or by referring to evidentiary documents already in the record, set out specific facts showing that a genuine issue exists. *See Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *Fields,* 922 F.2d at 1187. In order for a court to find there

---

1. EPCWID also filed a motion to dismiss, alleging that it was an arm of the state of Texas and was, therefore, entitled to immuni- ty under the Eleventh Amendment. The Court denied this motion.

are no genuine material factual issues, the court must be satisfied that no reasonable trier of fact could have found for the non-moving party or, in other words, that the evidence favoring the nonmoving party is insufficient to enable a reasonable jury to return a verdict for the nonmovant. *See Liberty Lobby*, 477 U.S. at 249–50, 106 S.Ct. 2505; FED.R.CIV.P. 56(e).

Where the party opposing the motion for summary judgment will have the burden of proof on an essential element of his case at trial and does not, after adequate time for discovery, make a showing sufficient to establish the existence of that element, summary judgment may be entered against him. *Celotex*, 477 U.S. at 322–24, 106 S.Ct. 2548; *Fontenot*, 780 F.2d at 1194–95.

### Section 181.082 of the Texas Utilities Code

At the heart of much of this dispute lies Section 181.082 of the Texas Utilities Code, which provides:

> A telephone or telegraph corporation may install a facility of the corporation along, on, or across a public road, a public street, or public water in a manner that does not inconvenience the public in the use of the road, street, or water.

■ SWBT argues that this section authorizes it to install the telephone cables at issue.[2] According to SWBT, its cables are installed along public roads or public waters and are, therefore, permitted. In general, Texas courts have long held that the right of a telephone company to install wires on rights-of-way or public streets is a powerful one that overrides private interests, and one with which a city cannot interfere. *Roaring Springs Town–Site Co. v. Paducah Tel. Co.*, 109 Tex. 452, 454, 212 S.W. 147 (Tex.1919); *City of Brownwood v. Brown Tel. & Tel. Co.*, 106 Tex. 114, 157 S.W. 1163 (Tex.1913).

EPCWID counters by arguing that the highways that cross its lands are not public roads and that the waters it controls are not public waters. In its motion for summary judgment, EPCWID also argues that this section is unconstitutionally vague, or is vague as applied to it; that this provision is preempted by the Telecommunications Act of 1996; and that it violates the Texas Constitution.

### Preemption

EPCWID argues that § 181.082 is preempted by 47 U.S.C. § 253(c), which states:

> Nothing in this section affects the authority of a State or local government to manage the public[3] rights-of-way or to require fair and reasonable compensation from telecommunications providers, on a competitively neutral and nondiscriminatory basis, for the use of public rights-of-way on a nondiscriminatory basis, if the compensation required is publicly disclosed by such government.

■ EPCWID is somewhat vague about the basis for its preemption argument. It cites a case for the proposition that "Texas state law regulating telecommunication carriers' rights over railroad rights-of-way[ ] is preempted by federal law to the extent of any conflict." It also states that "Congress has assumed the field and has said in no uncertain terms that competition must be fostered, local governments must retain the right to control their property, and taxpayers should not have to subsidize

---

**2.** A "facility" is defined as a "pole, pier, abutment, wire, or other fixture related to a telephone ... line." TEX.UTIL.CODE § 181.081.

**3.** Interestingly, EPCWID's quotation of this section in its motion for summary judgment omitted the word "public."

the business of telecommunications any longer." Nevertheless, EPCWID has failed to point to any actual conflict requiring preemption. By its own terms, § 253(c) does not affect the state and local government's authority to charge money for use of public rights-of-way. Contrary to EPCWID's contentions, however, Section 253(c) certainly does not indicate an intention to "assume the field" and *require* state and local governments to charge for use of public rights-of-way. This is particularly true in light of the stated purpose of Section 253, namely, removal of barriers to entry. While there certainly are preemptive sections of the Telecommunications Act, 47 U.S.C. § 253(c) is not one of them.

### Validity under the Texas Constitution

In its motion for summary judgment, EPCWID argues that SWBT's interpretation of Section 181.082 would be in violation of Article III, § 52 of the Texas Constitution because it would require EPCWID to grant free use of its property to a private corporation. Article III, § 52 prohibits the Texas Legislature from:

> authoriz[ing] any county, city, town or other political corporation or subdivision of the State to lend its credit or to grant public money or thing of value in aid of, or to any individual, association or corporation whatsoever.

■ This provision is inapplicable to grants of public money or things of value to serve a public interest. *Graves v. Morales,* 923 S.W.2d 754, 757 (Tex.App.—Austin 1996, writ denied). The provision of telephone service has been determined to be of public value and in the public interest. *See Roaring Springs Town–Site Co. v. Paducah Tel. Co.,* 109 Tex. 452, 454, 212 S.W. 147 (Tex.1919). Therefore, a law permitting a telephone company to use public streets for its lines does not violate the Texas Constitution.

### Void for Vagueness

■ EPCWID argues that the word "public" in Section 181.082 makes the statute unconstitutionally vague. While the parties argue over the interpretation of the word "public" in the statute, this disagreement does not render it void for vagueness.

■ Although a civil statute may violate the Due Process Clause by being vague, to be unconstitutionally vague, a statute must be so vague or unclear such that it entirely failed to create any rule or standard. *Jones v. City of Lubbock,* 727 F.2d 364, 373 (5th Cir.1984). Section 181.082 does not leave parties to guess at the legality of their conduct and is not unconstitutionally vague.

### Public Roads

With the challenges to § 181.082 resolved, it is undisputed that SWBT is entitled to place its lines along, on, or across public roads. Despite the significance of the determination that a road is a public road, both sides deal with the issue of public roads in very general terms. SWBT asserts that all the roads in question are public; EPCWID asserts that none of them are. The only specific road mentioned in the pleadings or the motion is Texas Highway 20; installation of cables along Highway 20 triggered this suit. Nevertheless, the two parties appear to be in agreement that the cables were installed along roadways and that the roads were either constructed or maintained by the City of El Paso, the Texas Department of Transportation, other cities or El Paso County. The public is permitted to use

these roads.[4]

EPCWID defines "public road" as a road dedicated to the public, and its motion and responses focus on the specifics of a dedication of private land for a public road.[5] It states that "the City of El Paso entered into a 50–year License Agreement with the United States that gave the City permission to construct roads and bridges across the laterals, canals, drains, wasteways and other irrigation facilities of the United States." (Def.'s Mot. at 5). EPCWID indicates that it became the successor in interest of the license agreement and that "the evidence inescapably shows that the City of El Paso has but a license to cross the property owned by EPC-WID." Therefore, according to EPCWID, because there has been no dedication, but only a license, there can be no public road. Additionally, according to EPCWID, " 'public' can mean only dedicated to the public because the License Agreement between EPWCID and the City of El Paso makes it undeniable that EPCWID has the right to have the roads removed upon breach or expiration of the Agreement." (Def.Mot. at 6).

■ Even assuming that these roads only exist by virtue of the agreement, they would still be "public roads." They are open to the public and are certainly not private roads. If EPCWID contests the validity of the roads, the Court agrees with SWBT that the City of El Paso, and not SWBT, would be the appropriate party to those disputes.

Furthermore, it is undisputed that some of the roads in question are state highways, EPCWID does not claim that State

Highway 20, for example, is entirely dependent upon an agreement between the federal government and the City of El Paso.

Additionally, EPCWID has not pointed to any cases, nor has the Court found any, indicating the method by which one governmental entity within the state obtains a right-of-way for a road from another governmental entity in the state.

SWBT, therefore is entitled to summary judgment on its claims that it is permitted to set cables along streets controlled and maintained by the City of El Paso, El Paso County and/or the State of Texas.

### Public Waters

Alternatively, SWBT argues that it is entitled to install cables and wires along the canals, laterals and ditches because EPCWID's waters are "public waters" under Texas Utilities Code § 181.082.

EPCWID argues that its waters are not public, and therefore are not affected by Section 181.082. Specifically, EPCWID argues · that its waters are excluded from the definition of "state water" in Texas Water Code § 11.021. Under the Water Code, "[t]he water of the ordinary flow, underflow, and tides of every flowing river, natural stream, and lake ... and the storm water, floodwater, and rainwater of every river, natural stream ... in the state is the property of the state." TEX. WATER CODE § 11.021. According to EPCWID, the diversion of water and its permit from the Texas Natural Resource Conservation Commission, removes its water from the definition of public water. Additionally, EPCWID argues that the addition of sew-

---

4. EPCWID's response to Request for Admission No. 2, attached as exhibit 15 to Plaintiff's Motion for Summary Judgment.

5. Some of EPCWID's citations in this regard are inapplicable. For example, EPCWID

cites Texas Transportation Code §§ 281.002, 281.003, which concern the methods by which a county with a population of 50,000 or fewer people may acquire a public interest in a private road.

age effluent and some groundwater makes its water not public.

Neither side has pointed to any caselaw defining "public water." The Court does agree with SWBT that it is somewhat problematic for a governmental entity, particularly a water conservation district organized under the Texas Constitution, to argue that the waters it controls are not public. *Cf. Clark v. Briscoe Irrigation Co.,* 200 S.W.2d 674, 682 (Tex.Civ. App.—Austin 1947, writ dism'd) ("clear and explicit purpose" of Article 16, Section 59 of the Texas Constitution is to "conserve the public waters of the State and to develop their use in the public interest"). *Also cf.* TEX. WATER CODE § 49.217 (prohibiting the operation of motor vehicles "on or near *public facilities,*" (emphasis added) *i.e.,* "a drainage ditch, or on land adjacent to a levee, canal, ditch, exposed conduit, pipeline, pumping plant, storm water facility, or other facility for the transmission, storage, treatment, or distribution of water, sewage, or storm water owned or controlled by a district").

 Additionally, the Court notes that EPCWID's argument is based on the definition of "state waters," whereas Section 181.082 refers to "public waters." The Texas Attorney General has distinguished the definition of "state waters" from the definition of "public waters" for the purposes of another Texas statute. Tex.Atty-Gen.Op. JM–572 (October 29, 1986). The Court believes that here, too, the definitions are not necessarily co-extensive and that these waters are public waters.

 EPCWID argues that, although the lines do not inconvenience the public in terms of use of the water, the lines encumber its property and could potentially in-terfere with its activities. Section 181.082 merely requires that the installation occur in a manner that does not interfere with the public's use of the water. However, encumbrances on property and potential difficulties in EPCWID's potential expansion of canals do not constitute interference with the public's use of the water.

As an alternative basis for granting summary judgment, then, it appears that EPCWID's waters are, indeed, public waters and that SWBT would be entitled to install cables along the waters, so long as the cables do not interfere with the public's use of the water.

### Federal Telecommunications Act

SWBT argues that EPCWID's application process constitutes a barrier to entry prohibited by the FTA. The FTA forbids state or local requirements that would have the effect of prohibiting any entity's ability to provide telecommunications service. 47 U.S.C. § 253(a). EPCWID's application requirements would, indeed, have this effect. In response, EPCWID does not argue that its requirements do not constitute a prohibited barrier to entry;[6] rather EPCWID argues that it is entitled to charge reasonable fees for use of its public rights-of-way under 47 U.S.C. § 253(c). As mentioned before, nothing in Section 253(c) preempts Section 181.082. Additionally, in order to claim the protection of Section 253(c), instead of general preemption, EPCWID would have to concede that its rights-of-way were, in fact, public. It does not appear willing to do this.

### EPCWID's power under state law

SWBT argues that EPCWID, as a creature of state law, only has the powers granted to it by the law, and that these powers do not include monitoring and

---

**6.** EPCWID does argue that SWBT has not demonstrated that EPCWID's property is the only location for telecommunications facilities in El Paso.

charging fees for telecommunications providers to use its rights-of-way. In response, EPCWID points to broad language concerning its ability to charge for use of its facilities, to enter into leases, and to acquire property.

In a related argument, SWBT argues that PURA prohibits EPCWID from charging a fee. Under PURA, municipalities are not limited in terms of their ability to "control and receive reasonable compensation for access to the municipality's public streets, alleys, or rights-of-way or to other public property." TEX.UTIL.CODE § 54.205. Nothing in this statute permits water improvement districts, or any local governmental entities other than municipalities, to receive compensation for the use of their rights-of-way by telecommunications providers. Although EPCWID generally discusses its rights and powers, nowhere in its response does it address its relationship to PURA.

### EPCWID's Objections to Summary Judgment Evidence

EPCWID objects to several exhibits attached to SWBT's motion for summary judgment. The Court will not address the objections to exhibits 1, 2, 30, 33 and 38 because those exhibits played no part in the Court's decision. Exhibits 3–5 are admissible insofar as they are public land records and reports of public agencies. FED.R.EVID. 803(8), (14). To the extent that these exhibits do not fit in these exceptions to the hearsay rule, the Court will not consider them. The Court cannot determine the basis of EPCWID's objections to exhibits 6–18 and will, therefore, overrule these objections.[7] EPCWID's objection to exhibit 32, which is that it is a copy of exhibit 31, will be overruled.

7. EPCWID's objections to exhibits 6–18 read, in their entirety, "for the reasons stated

### Motion to Dismiss Trespass Counterclaim

In a separate motion, SWBT argues that the Court should decline to exercise its supplemental jurisdiction over EPCWID's counterclaim for trespass. Despite SWBT's argument, the Court will not dismiss the counterclaim on this basis.

A court may decline to exercise supplemental jurisdiction over a claim for four reasons: 1) it "raises a novel or complex issue of State law;" 2) it substantially predominates over claims within the court's original jurisdiction; 3) all claims over which the court had original jurisdiction have been dismissed; and 4) if there are "exceptional circumstances" and "compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c). The first three bases for declining to exercise jurisdiction do not exist here. Therefore, the Court must determine whether this case presents any exceptional circumstances or compelling reasons to decline jurisdiction. The Court must conclude that it does not.

■ Although this claim is potentially unwieldy, a party's inability to clarify a claim does not present an exceptional circumstance or a compelling reason to decline jurisdiction. SWBT's argument is, in essence, an argument that EPCWID cannot possibly establish its trespass claim. This is not a basis for a court to abstain from hearing a case. SWBT's motion will be denied.

### EPCWID's Motion

EPCWID moves for summary judgment on its counterclaims on five main grounds. The first three grounds have been addressed above. In addition, EPCWID argues that SWBT has breached a contract

above."

SWBT originally entered into with the United States. Finally, EPCWID argues that it is entitled to summary judgment on its trespass claim.

### Breach of Contract

EPCWID's motion to amend its answer and add a breach of contract counterclaim was denied as untimely. Therefore, its motion for summary judgment on this counterclaim will be denied.[8]

### Trespass

EPCWID argues that it is entitled to summary judgment on its trespass counterclaim. A trespass claim is one of unauthorized and intentional entry upon land. *Nugent v. Pilgrim's Pride Corp.*, 30 S.W.3d 562, 575 (Tex.App.—Texarkana 2000, pet. denied). The Court has determined that SWBT's entry was authorized. Therefore, EPCWID's trespass claim will be dismissed.

### Conclusion

ACCORDINGLY, it is ORDERED that Plaintiff's Motion for Summary Judgment (Doc. No. 80) is GRANTED, that Defendant's Motion for Summary Judgment (Doc. No. 73) is DENIED, that Plaintiff Southwestern Bell Telephone Company's Motion to Dismiss Counterclaim (Doc. No. 75) is DENIED.

---

**8.** The motion to amend and the motion for summary judgment were filed on the same day.